# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **WILLIE THOMAS** | * | **CIVIL ACTION NO. 06-1707** |
| **VERSUS** | * | **JUDGE MELANÇON** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Willie Thomas, born August 13, 1958, filed applications for a period of disability, disability insurance benefits, and supplemental security income payments on September 26, 2003, asserting disability as of June 24, 2003, due to congestive heart failure, hypertension, diabetes, and hyperlipidemia.

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from Dauterive Hospital dated June 30, 2003**. Claimant complained of shortness of breath and upper abdominal pain. (Tr. 129). Chest x-rays showed cardiomegaly with congestive failure. (Tr. 131). The impression was congestive heart failure. (Tr. 128).

**(2) Records from Cardiovascular Institute of the South dated July 1, 2003 to November 25, 2003**. Claimant underwent left and right heart catherization, and selective coronary angiogram. (Tr. 149). The procedures revealed severely dilated cardiomyopathy with ejection fraction of approximately 10%. Dr. Juan Pastor-Cervantes diagnoses were severely depressed LVEF of 10%, moderated MR, 60% ostial right coronary artery stenosis, moderately depressed cardiac output with mild pulmonary hypertension, elevated PCWP and LVEDP, hyperlipidemia, and medical noncompliance. (Tr. 145, 150). He recommended that claimant undergo medical treatment for CAD and hypertension, and stop smoking. (Tr. 150).

**(3) Consultative Examination by Dr. John Canterbury dated January 24, 2004**. Claimant complained of a weak heart, high blood pressure, and shortness of breath. (Tr. 166). He was also a diabetic. His main problem appeared to be shortness of breath with any significant exertion.

Claimant was able to perform most of his activities of daily living. He was able to walk for about a mile, after which he developed shortness of breath. His medications included Coreg, Lasix, Diovan, Chlorcon, Aspirin, Metformin, Lipitor, and Norvasc.

On examination, claimant was 70 1/4 inches tall, and weighed 221 pounds. (Tr. 167). His blood pressure was 166/104, but he did not have symptoms. His heart had regular rate and rhythm, with no murmurs, gallops or rubs.

Claimant ambulated well, and needed no assistive device . He was able to get on and off the exam table, up and out of the chair, and dress and undress without difficulty.

On spine/extremities examination, claimant had 2+ pulses. He had no cyanosis, clubbing, or edema. Grip strength was 5/5. He had no atrophy or deformity of any muscle groups. Range of motion for all joints appeared to be intact.

Claimant's sensory exam was intact. (Tr. 168). He had no signs of any cerebellar deficits. His cranial nerves were intact.

Chest x-rays showed clear lung fields and increased cardiothoracic ratio at about 0.5 and 0.55. Claimant appeared to have some cardiomegaly on examination.

Dr. Canterbury's impression was congestive heart failure of unknown etiology, probably related to coronary artery disease and diabetes. He opined that claimant

could sit, stand, and walk for a mile. He was able to lift moderately heavy objects. Hearing, speaking, and handling of objects appeared to be intact.

**(4) Residual Functional Capacity ("RFC") Assessment – Physical dated February 21, 2004**. The medical consultant determined that claimant could lift 20 pounds occasionally and 10 pounds frequently. (Tr. 170). He could stand, walk and sit about 6 hours in an 8-hour workday. He had unlimited push/pull ability. He could do all postural activities occasionally, except that he could never climb ladders, ropes, and scaffolds. (Tr. 172).

**(5) Consultative Examination by Dr. Lori Taylor dated May 21, 2005**. Claimant had a history of hypertension, diabetes, and congestive heart failure. (Tr. 178). He reported that he sat most of the day, and became short of breath after walking half a mile. His medications included Diovan, Norvasc, Furosemide, Spironolactone, Amaryl, Zetia, Lipitor, and Coreg.

Claimant was able to dress and feed himself; stand for 45 minutes at a time and for 3 to 4 hours in an 8-hour day; walk on level ground for roughly half a mile; sit for 2 to 3 hours, lift roughly 10 pounds, and drive a car. He did not perform any household chores. He did not smoke. (Tr. 179).

On examination, claimant was 5 feet 10 inches tall, and weighed 224 pounds. His blood pressure was 134/89. He ambulated well, and got up and out of the chair

and on and off the exam table without difficulty. His heart had S1, S2 with a regular rate and rhythm, and no murmurs, rubs, or gallops. There was no S3 or S4.

On spine/extremities exam, claimant's pulses were 2+. (Tr. 180). He had no clubbing, cyanosis, edema, swelling, redness, or effusion of the joints. Gait was normal and steady, and did not require an assistive device. Grip was 5/5, without evidence of bony deformities or muscle atrophy. He exhibited good fine and gross manipulative skills.

Claimant exhibited full range of motion in all joints. He was able to walk on his heels and toes, heel to toe walk, and squat to the floor with good recovery. He had no ulcerations or varicosities. Claimant did not appear short of breath during or after these activities.

On neurologic examination, claimant's mentation was normal. Motor strength was 5/5 in all muscle groups, without evidence of atrophy. Sensory exam was intact. Deep tendon reflexes were 2+ throughout.

Dr. Taylor's impression was congestive heart failure, hypertension, diabetes, and hyperlipidemia, for which claimant was no current medical therapy. She found that claimant was able to sit, stand, walk, and handle objects without difficulty. He was also able to hear and speak at normal conversational level.

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Taylor determined that claimant could lift/carry 20 pounds occasionally and 10 pounds frequently; stand and walk about 6 hours in an 8-hour workday, and sit, push, and pull without limitations. (Tr. 181-82). He could occasionally climb, kneel, crouch, crawl, and stoop, and frequently balance. (Tr. 182). He had no manipulative, visual/communicative, or environmental limitations. (Tr. 183-84).

**(6) Records from University Medical Center ("UMC") dated May 28, 2004 to August 12, 2005**. On May 28, 2004, claimant was referred to be evaluated in cardiology. (Tr. 220). He had no complaints, and felt "great." (Tr. 219-20).

On September 30, 2004, claimant denied any shortness of breath, fluid buildup, chest pain, or any other symptoms. (Tr. 217). He stated that he felt "great." The impression was hypertension, diabetes, and questionable CHF.

On November 8, 2004, claimant had no complaints. (Tr. 211). Chest x-rays showed mild congestive heart failure. (Tr. 209).

On February 16, 2005, claimant had no complaints. (Tr. 201). His diagnoses were diabetes mellitus, hypertension, hypercholesterolemia, and CHF. (Tr. 202). He was instructed to continue his medications.

An echocardiographic report revealed a moderately dilated left ventricle with significantly reduced function, moderate concentric left ventricular hypertrophy, and diffuse hypokinesia; normal mitral valve; moderately dilated left atrium; normal aortic root and valve; normal right atrium and ventricle, and 1+ mitral regurgitation. (Tr. 199).

On September 28, 2005, claimant stated that he could not afford his medications. (Tr. 224). He had no discomfort. (Tr. 225). On September 29, 2005, his CHF had improved. (Tr. 223).

**(7) Consultative Examination by Dr. Kenneth Ritter dated December 19, 2005**. Claimant complained of a weak heart, hypertension, shortness of breath on exertion, and chest pain. (Tr. 229). His medications included Norvasc, Lipitor, Zetia, Diovan, Coreg, Amaryl, Humalog insulin, Furosemide, and Aspirin.

On examination, claimant's blood pressure was 142/100. (Tr. 230). He was 5 feet 10 ½ inches tall, and weighed 225 pounds. His lungs were clear. His heart had regular sinus tachycardia with a grade 3/6 holosystolic murmur and distant heart tones.

Examination of the extremities revealed no ankle swelling. Claimant had a normal gait and station. He had negative straight-leg raises bilaterally. He had a full range of motion of all extremities without redness, heat, tenderness, or swelling of

any joint. He was neurologically intact with normal DTRs, strength, and sensation.

Dr. Ritter's impressions were a history of congestive heart failure and evidence of left ventricular hypertrophy from hypertension, which had been poorly controlled over the last several years; hypertension with elevated blood pressure, which was poorly controlled; adult onset diabetes mellitus, which had been very poorly controlled, and hyperlipidemia, currently being treated. (Tr. 231) He noted that claimant was minimally symptomatic from heart failure at that time. He also stated that claimant had been very non-compliant with his medical regimens.

In the Medical Source Statement of Ability to do Work-Related Activities (Physical), Dr. Ritter indicated that claimant was limited to lifting and carrying 25 pounds occasionally and 10 pounds frequently. (Tr. 232). His ability to stand, walk, sit, push, and pull were not affected by his impairment. (Tr. 232-33). He had occasional limitations as to climbing, but could frequently balance, kneel, crouch, crawl, and stoop. (Tr. 233). He had no manipulative, visual/communicative, or environmental limitations. (Tr. 234-35).

**(8) Claimant's Administrative Hearing Testimony**. At the hearing on November 8, 2005, claimant was represented by Marian R. Frye, Senior Paralegal with Acadiana Legal Service Corporation. (Tr. 241). Claimant was 47 years old at the time. (Tr. 244). He had finished high school.

Claimant testified that he had last worked loading trucks at the Wal-Mart distribution center. (Tr. 244). He stated that he had worked there for about a year. (Tr. 245). Prior to that, he had worked at Martin Mills for 17 years as a dry operator. He had quit working in June of 2003 after he was diagnosed with heart failure.

Claimant testified that he was taking several medications for diabetes and heart failure. (Tr. 246). He stated that the medications had helped him, but made him drowsy. (Tr. 247, 253). He complained that he still became tired on exertion. (Tr. 247, 252-53).

As to activities, claimant testified that he tried to help his wife in the house a little bit. (Tr. 247). He said that he was able to bathe and dress himself. He reported that he drove a little bit, took out the garbage sometimes, and mowed the grass a little bit. (Tr. 248). He also attended church. (Tr. 255).

Regarding limitations, claimant stated that he had problems with sitting after a couple of hours. (Tr. 248). He said that he could stand about half an hour or 45 minutes. He reported that he could walk for about 30 minutes.

Claimant had no problems with bending or squatting. He said that his doctor told him that he could not lift over 10 or 15 pounds. (Tr. 252

Claimant's wife, Loretta Thomas, testified that her husband became short-winded when he tried to do things. (Tr. 250).

9

At the end of the hearing, the ALJ stated that he was going to order an internist consultative examination to get another heart test. (Tr. 255). He stated that a copy of the report would be sent to Ms. Frye and/or claimant. (Tr. 256).

**(9) The ALJ's Findings**. Claimant argues that: (1) the ALJ provided improper notice of his right to cross-examine the post-hearing consultative examiner, and (2) the ALJ erred in relying exclusively on the Medical-Vocational Guidelines to deny benefits.

As to the first argument, claimant asserts that the ALJ failed to properly advise him of his "automatic" right to confront and cross-examine the post-hearing report drafter, Dr. Ritter, citing *Lidy v. Sullivan*, 911 F.2d 1075 (5th Cir. 1990), and *Tanner v. Secretary of Health and Human Services*, 932 F.2d 1110 (5th Cir. 1991) [rec. doc. 10, pp. 4-9; rec. doc. 12, pp 1-4]. However, both of these cases are distinguishable.

In *Tanner*, the ALJ sent post-hearing written interrogatories to a vocational expert without notifying claimant's attorney. After the vocational expert issued a report, the ALJ sent a copy to claimant's counsel. In response, claimant's counsel sent a letter to the ALJ stating his objections to the interrogatories. Without addressing counsel's objections, the ALJ incorporated the expert's report into the record and issued a ruling rejecting claimant's benefits claim based on the expert's vocational conclusions. The Fifth Circuit held that the ALJ committed reversible

10

error by relying on the post-hearing report to deny claimant's request for benefits without giving counsel an opportunity to cross-examine the vocational expert.

In *Lidy*, claimant had sought a subpoena to cross-examine an examining physician. The ALJ refused claimant's request, but permitted him to submit a written set of interrogatories. The Fifth Circuit found that this was insufficient, holding that "*by requesting a subpoena*, a claimant has the right to cross-examine an examining physician." (emphasis added). 911 F.2d at 1077.

Unlike *Tanner* and *Lidy*, claimant in this case was represented. Additionally, *Lidy* is distinguishable because the claimant there had *requested* a subpoena. (emphasis added). That is not the case here.

Claimant specifically argues that the "notice" sent to his representative does not comport with the requirements of *Lidy*. The record reflects that the Social Security Administration sent a notice to claimant's attorney, Marian Frye, containing the following language:

> You may request that I issue a subpoena to require the attendance of witnesses or the submission of records [at a requested supplemental hearing]. You must submit a subpoena request, in writing, no later than 5 days before the date of any supplemental hearing.

(Tr. 52).

Although claimant's representative was sent a notice informing her of the right to subpoena witnesses, she did not exercise this right on behalf of claimant. *Lidy* clearly states that *by requesting a subpoena*, a claimant has the right to cross-examine an examining physician. (emphasis added). 911 F.2d at 1077. As claimant was given the *opportunity* to subpoena Dr. Ritter, but did not, his due process rights were not violated. (emphasis added). *Lidy,* 911 F.2d 1077 (citing *Richardson v. Perales*, 402 U.S. 389, 402, 91 S.Ct. 1420, 1428, 28 L.Ed.2d 842 (1971) ("[d]ue construe process requires that a claimant be given the *opportunity* to cross-examine and subpoena the individuals who submit reports") (emphasis added); *Hollis v. Mathews*, 520 F.2d 338, 340 (5th Cir. 1975) (plaintiff was not denied due process where she had not made a timely request to subpoena physician and thus had not exercised her right to secure the opportunity for cross-examination). Thus, this argument lacks merit.

Next, claimant argues that the ALJ erred in relying exclusively on the Medical-Vocational Guidelines to deny benefits. Specifically, he asserts that the ALJ erred in failing to call a vocational expert based on his non-exertional limitations, such as shortness of breath with any significant exertion. [rec. doc. 12, pp. 4-5]. However, the regulations provide that the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform when

the characteristics of the claimant correspond to criteria in the Medical-Vocational Guidelines of the regulations, and that claimant either suffers only from exertional impairments *or his non-exertional impairments do not significantly affect his residual functional capacity*. (emphasis added). *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987); 20 C.F.R. § 404.1569 and Part 404, Subpart P, Appendix 2, Section 200.00. Here, the ALJ determined that claimant's non-exertional impairments from his heart condition did not significantly affect his residual functional capacity. (Tr. 18). This is supported by Dr. Ritter's opinion that claimant was only minimally symptomatic from his heart failure, as well as UMC's records indicating that his CHF had improved. (Tr. 223, 231).

Additionally, the ALJ noted that claimant's hypertension was not well-controlled, but the record reflected that he was noncompliant with his medications. (Tr. 18). The records from Iberia Comprehensive/Gardiner Community Health Center, Cardiovascular Institute of the South, and Dr. Ritter confirm that claimant did not take his medications as prescribed. (Tr. 120-21, 145, 231). It is well established that failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 404.1530(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990). Thus, the ALJ's decision not to call a vocational expert is entitled to deference.

13

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within ten (10) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED***

*SERVICES AUTOMOBILE ASSOCIATION*, **79 F.3D 1415 (5TH CIR. 1996).**

Signed October 5, 2007, at Lafayette, Louisiana.

*C. Michael Hill*
C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE